UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LOUIS A. VERWAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-4066 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter comes before the Court on cross motions for summary judgment. The issue presented is whether substantial evidence in the record supports the ALJ's finding that the Plaintiff was not disabled. For the reasons set forth below, the Court GRANTS [#14] Defendant's motion for summary judgment, DENIES [#11] Verway's motion for summary judgment, and AFFIRMS the decision of the Commissioner.

## BACKGROUND

**I. Course of Proceedings**   Plaintiff, Louis A. Verway ("Verway"), brings this action pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Verway's claim for Disability Insurance Benefits ("DIB") under the Social Security Act, 42 U.S.C. § 1381.

1

On October 12, 1994, the agency granted Verway's application for DIB, after an ALJ determined Verway had been disabled since January 14, 1993. (R17, 57-60, 219-26) His disability was re-evaluated in March of 2000, resulting in a status of continued disability. (R17, 233-36) Verway's status was again reviewed in 2003; this time, the Social Security Administration ("SSA") found the disability had ceased due to medical improvement of his seizure disorder. (R17, 237-38) On July 11, 2003, Verway was notified that this period of disability had ceased as of June 2003, and his eligibility for DIB would end as of August 2003. (R17, 237-38, 239-42) The SSA responded to Verway's request for reconsideration by notifying him that his eligibility was discontinued because of improvements in his health. (R17, 271-72) The claimant then requested a hearing before an ALJ. (R14-25)

On March 16, 2005, the ALJ found that based on Verway's medical improvement related to his ability to work, he was no longer disabled and therefore not eligible for DIB. (R14-25) The Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner. (R6-8) Verway subsequently filed his complaint for judicial review in this Court, and this Order follows.

**II. Medical History**

Verway was born on September 28, 1957, and was 47 years old at the time of his most recent hearing before the ALJ. (R18, 57) The ALJ, Tony L. Eberwein, found the claimant suffered from severe epilepsy due to the head injury he sustained during a motorcycle accident in 1987. (R18, 129-30, 127-28, 164-165, 170, 180-81, 186, 219-26) The ALJ determined the claimant met the requirements of section 11.03, Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments), because Verway suffered both grand mal and partial complex seizures

five to eight times a week on average despite complying with prescribed medical treatment. (R17, 18, 219-26)  On review, the disability was found to have continued in 2000, but when reviewed again in 2003, was found to have discontinued.  (R17-19, 330-2, 349-54)  All evidence from Verway's many examinations and tests since his accident in 1987 was considered by the ALJ.  (R17-25)

The partial complex seizures cause Verway to hear echoes, feel a tingling sensation in the middle of his chest, and experience difficulty speaking and understanding words, but they do not cause loss of consciousness or tonic-clonic activity.  (R19, 374, 410-11)  They last for ten to twenty minutes and are followed by fatigue and confusion for several hours. (R19, 374, 410-411) The grand mal seizures involve a loss of consciousness, tonic-clonic activity, and fatigue and confusion for up to nine hours (R19, 374, 394).  At his 2000 review, the claimant told the physician he was having four or five grand mal seizures a year and partial seizures several times each month.  (R22, 330-32)  At the time of the most recent review in 2003, Verway was having a partial seizure every one or two weeks and had not had a grand mal seizure since September of 2002. (R19, 22, 346, 409-10)

A.  Treating Physicians' Examinations

On April 20, 2000, when the SSA determined that Verway's disability continued, the medical evidence of record indicated the following.  (R17, 233)  Dr. Randall L. Mullin, M.D., Verway's family physician, had reported that in 1993 the seizures were particularly difficult to control.  (R21, 214) However, in 1998, Dr. Mullin reported the seizures were controlled and further reported that Verway was doing well in 2002, but had experienced a recent partial seizure due to over-exertion and a grand mal seziure in September 2002.  (R21, 23, 214, 343, 346-7)  By

contrast, in June 2004, Dr. Mullin referred Verway to Dr. Christopher Zallek, M.D., who found only a trace of weakness in Verway's left arm, but no other abnormalities when he ran an electroencephalogram (EEG). (R19, 23, 374-6, 378-9) Dr. Zallek noted Verway's complaints about daytime sleepiness and sedation. (R378-9) Later in September 2004, Dr. Mullin reported that Verway could operate a motor vehicle, utilize public transportation independently, would not need unscheduled breaks, and could tolerate a moderate amount of work-related stress. (R20, 23, 395) Dr. Mullin also stated that Verway's seizures may disrupt his coworkers and require him to have more supervision. (R20, 395)

## B. Agency Physicians' Examinations

Verway was examined by Dr. Stanley Rabinowitz and Dr. Mark DeYoung at the request of the agency. (R19-20, 23, 330-32, 349-54) In April 2000, Dr. Rabinowitz examined Verway and found that his disorder was poorly controlled. (R332) At that time, Verway reported he had experienced four or five major grand mal seizures that year and minor seizures several times each month totaling 50 seizures. (R22, 330-32) He also had reduced grip strength and a mild decrease in his ability to make a fist in his left hand, as well as motor weakness in his left upper and lower extremities. (R331) In August 2003, Dr. DeYoung reported Verway had significant seizure activity, mild apparent memory loss, and mild visual impairment corrected with glasses. (R19, 354) Dr. DeYoung later stated that Verway appeared to be in fairly good physical condition, had normal body strength, excellent fine motor control of his hands, and normal neurological findings. (R19, 23, 352-3)

Verway's medical evidence was reviewed by two agency medical consultants in 2003. (R335-40, 356-61) In June 2003, and August 2003 respectively, Paul Smalley, M.D. and Boyd

4

McCracken, M.D., both found that Verway required no exertional limitations, but should not climb ropes, ladders, or scaffolds, should not have to balance, and should avoid noise and hazards. (R19, 334-5, 337, 340, 359)

**III. Vocational History**

The claimant had been receiving DIB for 15 years. (R21, 406) Previously, he worked full-time as a welder, where he was able to work despite having seizures because management accommodated his disorder. (R21, 406-7) Once the factory closed, he worked four to five hours a day performing maintenance at a printing plant. (R21, 406) He lifted up to 75 pounds and climbed up on printing presses to fill them with ink, but performed mostly clean up duties. (R21, 406, 408)

Verway testified that he can probably lift 50 pounds or more on an occasional basis, be on his feet for 1 ½ hours before needing to sit down, walk two blocks, and sit comfortably in a work chair. (R22, 419-20) He does laundry, vacuums, washes floors, mows half of the lawn, and drives an automobile. (R22, 415)

Vocational expert ("VE") George Paprocki testified before the ALJ at the October 2004 hearing. (R17, 422-426) The ALJ asked the VE to determine the employability of a hypothetical person with a specific residual functional capacity ("RFC"). (R24, 423) This person has a history of a closed head injury resulting in a seizure disorder, is limited to lifting 50 pounds occasionally and 25 pounds frequently. (R23, 423) The person cannot balance, climb ropes or ladders, work around hazards, extreme noise or flashing lights, drive, or work at more than a regular pace. (R23, 423) Based on the RFC given to the VE, he determined that the hypothetical person could not perform his past work but would be able to perform several jobs in

5

the national economy such as laundry worker II, library page, and housekeeper/cleaner. (R25, 424)  He stated that two half-day absences per month was "right at the borderline" but would not preclude employment.  (R424) When Verway presented the VE with a hypothetical involving additional limitations, including naps for two to three hours each afternoon, the VE stated that the additional sleep limitation would preclude competitive employment. (R23, 425-6)

**IV.  Decision of the ALJ**

The ALJ found that Verway's condition had medically improved, because he had not suffered a grand mal seizure since September 2002, not more than one complex partial seizure a week, and, at most, had trace weakness in his left upper extremity.  (R23-4) Thus, at the time of the comparison point in 2000, the Verway's condition met the requirements of section 11.03, but by the time of the ALJ review in 2005, it did not.  (R24)  Based on the combined clinical findings, the ALJ could not find evidence that the impairments reached the level of severity contemplated in the Listings since July 1, 2003.  (R24)

The ALJ also stated that he did not find Verway's subjective complaints credible, because the complaints were inconsistent with the objective medical evidence, the treating physicians' reports, and the claimant's daily activities.  (R23-4)  Having considered the evidence, the ALJ gave the description for the hypothetical person to the VE.  (R24)  He then found the VE's answers to the hypothetical question to be consistent with the claimant's age, education, previous work experience, and RFC, and therefore, determined that Verway was not disabled within th meaning of the Act. (R25)

# DISCUSSION

In order to be entitled to DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act requires the individual to show the existence of a medically determinable physical or mental impairment, or combination of impairments, which renders the plaintiff unable to engage in any substantial gainful activity. 42 U.S.C. § 1382(c)(a)(3)(A). Once, an individual is found to be entitled to disability benefits, he must undergo periodic reviews to determine continued entitlement. 20 C.F.R. § 404.1594(a). The disability ceases when substantial evidence shows: (1) medical improvement in the individual's impairment or combination of impairments which is related to the individual's ability to work; and (2) the individual is now able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1). The regulation provides eight-step sequential evaluation to determine whether disability continues. 20 C.F.R. § 404.1594(f).

> 1) Is the individual engaging in substantial gainful activity? If so, the disability has ended.
>
> 2) If the individual is not, does he or she have an impairment or combination of impairments which meets or equals the severity of a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1)? If so, disability will be found to continue.
>
> 3) If the individual does not, has there been medical improvement (which is defined as any decrease in the medical severity of impairment(s) which was present at the time of the most recent favorable medical decision that established disability or continued disability)? If there has been medical improvement, address step four. If there has been no medical improvement, proceed to step five.
>
> 4) If there has been medical improvement, is it related to the beneficiary's ability to work, i.e., an increase in the residual functional capacity ("RFC")? If so, proceed to step six. If not, proceed to step five.

5) If there has been no medical improvement or it is unrelated to work abilities, do any of the exceptions in paragraph (d) and (e) apply?

6) If medical improvement is shown to be related to the individual's ability to work or one of the first group of exceptions to medical improvement applies, are all current impairments in combination severe? If so, address step seven.

7) If the individual's impairments are severe, does the individual have the RFC to do work he has done in the past? If so, the disability has ended.

8) If the individual's impairments are severe, can the beneficiary do other work taking into consideration the individual's RFC, age, education, and work experience? If so, the disability has ended.

In order to prevent termination of benefits under the SSA, the claimant bears the burden of showing by medical evidence that he or she is disabled. Mables v. Sullivan, 812 F.Supp. 886, 888 (citing Matthews v. Eldridge, 424 U.S. 319, 336, 96 S.Ct. 893, 903, Carptentier v. Sullivan, 755 F.Supp. 816, (C.D.Ill.1990). "The [Commissioner's] burden, however, is to show that medical improvement has taken place and is related to plaintiff's ability to work." Id (citing § 2 of the Social Security Disability Benefits Reform Act of 1984, P.L. 98-460). Once the plaintiff shows the inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

Verway makes two claims of error: (1) the ALJ erred in relying upon an incomplete hypothetical, and (2) ALJ improperly discounted the plaintiff's complaints of fatigue. Each argument will be addressed in turn.

## I. Relying on an Incomplete Hypothetical

The claimant argues the ALJ relied on an incomplete hypothetical, because the hypothetical did not include all of the limitations suggested by Dr. Mullin. Specifically, Dr. Mullin reported in September 2004 that Verway would need extra supervision and would likely disrupt co-workers.

Hypothetical questions posed to the vocational expert must include limitations supported by medical evidence in the record. Cass v. Shalala, 8 F.3d 602,604 (7th Cir. 1993). An exception exists for cases in which the vocational expert independently learned of the limitations, through other questioning at the hearing or outside review of the medical records, and presumably accounted for them. Ragsdale v. Shalala, 53 F.3d 816, 818-21 (7th Cir. 1995). If a hypothetical accurately portrays a claimant's individual impairments, substantial evidence may be produced through reliance on the opinion of the vocational expert in response to that hypothetical. Robinson v. Sullivan, 958 F.2d 374, 3 (7th Cir. 1992) (citing Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987); Podedworny v. Harris, 745 F.2 210, 218 (3rd

9

Cir. 1984)). An ALJ's decision based on an inaccurate hypothetical is not based on substantial evidence and remand is required. <u>Young,</u> 362 F.3d at 1005; <u>Kasarsky v. Barnhart</u>, 335 F.3d 539, 544; <u>Nesbitt v. Barnhart</u>, No. 03 C 8308, 2004 WL 2092006, at 7 (N.D.Ill. Sept.14, 2004).

In <u>Robinson</u>, the reviewing court determined the hypothetical posed to the VE was not a materially incomplete hypothetical, even though it did not specifically include the claimant's nonexertional lung limitation. <u>Robinson</u>, 958 F.2d at 3. Because Mr. Robinson suffered from severe chronic obstructive lung disease, the ALJ presented the VE with a hypothetical person who was capable of sedentary unskilled work but could not tolerate welding fumes. <u>Id</u>. In upholding the ALJs finding of not disabled, the Court stated that "the medical evidence of Mr. Robinson's pulmonary condition clearly established his nonexterional lung limitation." <u>Id</u>.

Even without such an assumption, a claimant who cross-examines a vocational expert should raise any issues or limitations he believes are improperly excluded from the hypothetical. <u>Wilkins v. Barnhart</u>, 69 Fed.Appx. 775, 781 (7th Cir. 2003). In <u>Wilkins</u>, the claimant asked the VE how grip strength would impact his RFC, but "he never questioned the expert's assumption that a limitation to a routine and repetitive job properly accounted for his concentration problems." <u>Id</u>. The court determined that the claimant had waived any argument that the hypothetical was inappropriate because the claimant did not discuss the limitation when cross-examining the VE. <u>Id</u>; <i>see also</i> <u>Ragsdake v. Shalala</u>, 53 F.3d 816, 820 (7th Cir. 1995) (stating that "the claimant could question the vocational expert on cross-examination, pose his own hypothetical questions, or request the ALJ to pose interrogatories to the vocational expert, in each case challenging the VE to explain and expand upon the basis of his response to the ALJ's hypothetcal question.).

Here, the VE was asked to determine the employability of someone with a head injury that resulted in a seizure disorder, which accurately portrays Verway's medical condition. Just as in Robinson, the work environment limitations that necessarily arise for someone with such a disorder are therefore taken into account by the VE. Moreover, even assuming arguendo that the limitation of seizure disorder did not clearly imply a limitation of extra supervision and disruption to coworkers, the VE also heard Verway's testimony during the hearing. The VE heard Verway describe the severity, frequency, and limitations of his seizures, as well as his resulting lifestyle. This, in combination with the objective evidence of the record, fairly established the limitation of Verway's condition. As a result the Court cannot find that the ALJ relied on a materially incomplete hypothetical.

Finally, even assuming that the VE did not adequately consider these limitations, Verway waived his right to claim error resulting from their omission. When the VE was questioned at the hearing, the ALJ posed two hypothetical questions and then gave the claimant the opportunity to question the VE. Verway then questioned the VE on whether the fatigue and naps he was claiming to need would be limitations that would adversely effect his employability. He did not mention Dr. Mullin's reports or specific restrictions on supervision and disruption of coworkers. If these factors were not encompassed by the ALJ's hypothetical, Verway made no effort to address whether additional supervision or disruption would effect the VE's analysis. Because Verway did not ask about the limitations at the hearing, he has waived any right to do so here. *See* Wilkins, 69 Fed. Appx. at 781; Ragsdale, 53 F.3d 820.

**II. Discount of Plaintiff's Complaints**

Verway argues that the ALJ improperly discounted his complaints of fatigue. According

to the record, fatigue is noted in three areas of Verway's condition. The first is mentioned in Dr. Zallek's history where Verway said that if he performs any type of exertion, is stressed, or fatigued, he will have an increase in spells. The second reference is a statement made by Verway during the hearing where he said his medication made him so drowsy he needed to take two three-hour naps a day. The third reference is fatigue suffered after a seizure. As the third reference does not involve the type of fatigue argued by Verway and is taken into account by the ALJ in his acknowledgment that Verway would need two half-day absences a month, only the first two periods of fatigue will be addressed.

The ALJ did not include fatigue, other than those periods suffered post-seizure, in the hypothetical given to the VE, because he did not find Verway's allegations of fatigue to be credible. As stated above, ordinarily, a reviewing court defers to an ALJ's credibility determination. Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004). The general rule is that absent legal error, an ALJ's credibility finding will not be disturbed unless "patently wrong." Powers v. Apfel, 207 F.3d 431, 435 (7th Cir.2000); Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). The ALJ may not disregard a claimant's subjective complaints merely because they are not fully supported by objective medical evidence. SSR 96-7p. However, the ALJ may discount subjective complaints that are inconsistent or conflicting with the evidence as a whole. SSR 96-7p. Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995).

When assessing a claimant's credibility, the ALJ must consider the degree to which a claimant's allegations of pain and other symptoms are consistent with medical signs, laboratory findings, diagnoses, and opinions by treating or examining physicians and other medical sources. SSR 96-7p. Also to be considered are the claimant's daily activities; the location, duration,

frequency, and intensity of the symptom; the precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures the claimant has used to relieve the pain or other symptoms; and functional limitations and restrictions. Knight, 55 F.3d at 314. The ALJ must also adequately explain the reasons behind a credibility finding, as Social Security Ruling 97-7p requires an ALJ to go beyond a conclusory statement when articulating the decision of discrediting claimant's allegations. Brindisi v. Barnhart, 315 F.3d 783, 787-88 (7th Cir. 2003); SSR 96-7p.

Here, the ALJ's decision is based on both the proper legal standard and substantial evidence. The ALJ properly considered the evidence as a whole in finding Verway's allegation of disabling fatigue to be inconsistent with other evidence on the record. The first type of fatigue at issue is the fatigue that Verway claims causes his seizures or causes an increase in his spells. However, Dr. Mullin reported that Verway can drive an automobile and utilize public transportation, as well as tolerate a moderate amount of work-related stress and would not require unscheduled breaks. Dr. Zallek's tests also showed that there was no abnormal activity. The only variation was trace weakness in the left upper extremity, but Verway is right handed. Dr. McCracken assigned limitations to Verway that were similar to those assigned by Dr. Mullin, neither of which included two, three hour naps in the afternoon. None of the physicians suggested Verway was disabled. All of these facts were taken into consideration by the ALJ and the VE.

Analyzed in addition to Verway's daily activity and testimony, his subjective complaints are inconsistent with the objective medical evidence. Verway's daily activities include doing laundry, vacuuming, washing floors, and mowing the lawn. He testified he could probably lift

50 pounds on an occasional basis, and can lift his 65 pound daughter with his right arm. He can walk a few blocks and stand for 1½ hours before needing to rest. Accordingly, the ALJ's finding that the evidence supporting the severity of the disorder was inconsistent with Verway's allegation of total disability is based on substantial evidence, and his credibility assessment was not patently wrong.

The second period of fatigue at issue is the alleged side-effect of the medication taken by Verway. This was apparently not a problem when he was working from 1987 to 1993 because he was not on as much medication then. (R408-9) In 1993, when he had stopped working, Verway was on 500 mg of Dilantin. In 2004, he began taking 400 mg of Dilantin, 250 mg of Mysoline, and 250 mg of Keppra. Verway's assertion that he is on an increased amount of medication is consistent with the medical evidence, but the assertion that the increase will effect his employability due to fatigue is not. Dr. Mullin answered "no" to the question of whether Verway would need any unscheduled breaks as a result of his condition in his September 2004 report. Additionally, in August 2003, Dr. McCracken's limitations did not include any time limitations or recommendations for rest periods. Verway's daily activities also support the ALJ's determination that he is employable, at least for the occupations set forth by the vocational expert. As previously set forth, he is able to do indoor and outdoor chores as well as stand and walk for periods of time without needing to rest.

The ALJ sufficiently explained the reasons for his decision. After citing the factors he was required to consider, he listed the testimony of the claimant that supports the ALJ's finding of employability. He then explained in detail three instances where the objective evidence was inconsistent with Verway's testimony. The first are the inconsistent claims regarding the

severity and frequency of the seizures.  Verway has not had a grand mal seizure since September 2002, and strength and movement tests came back normal, except for the possible trace weakness in his left upper extremity.  Second, the physicians' findings and statements are inconsistent with Verway's claim of totally disability.  Dr. Mullin and Dr. McCracken specified certain limitations, but neither limited him from driving or taking public transportation alone.  Dr. Mullin further concluded that Verway could tolerate a moderate amount of work-related stress and would not need unscheduled breaks.  Finally the ALJ noted the inconsistency between Verway's claim of disabling fatigue and his daily activities, listing his stated capabilities and daily chores.  Because this is much more than a statement concluding Verway's testimony is consistent or not credible, the ALJ adequately explained his decision.  Accordingly, the Court cannot find that the ALJ's finding is clearly erroneous or patently wrong.

## **CONCLUSION**

For the reasons set forth herein, the Court finds that the ALJ's decision that Verway's disability has ended is supported by substantial evidence on the record.  Plaintiff's Motion for Summary Judgment [#11] is therefore DENIED, and the Commissioner's Motion to Affirm [#14] is GRANTED.  This matter is now terminated.

ENTERED this 12th day of July, 2006.

        s/ Michael M. Mihm
        Michael M. Mihm
        United States District Judge